1  DAVID J. ZUGMAN
   California State Bar Number 190818
2  964 Fifth Avenue, Suite 300
   San Diego, California  92101
3  Telephone: (619) 699-5931
   Facsimile: (619) 699-5932
4  dzugman@burchamzugman.com

5  Attorney for Octavio Moreno Reyna

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                  (HONORABLE ROGER T. BENITEZ)

11 UNITED STATES OF AMERICA,    )    Case No. 08CR1636-BEN
                                )
12              Plaintiff,      )    Date: June 30, 2008
                                )    Time: 2:00 p.m.
13 v.                           )
                                )
14 OCTAVIO MORENO REYNA,        )    NOTICE OF MOTIONS AND MOTIONS
                                )    TO
15              Defendant,      )    1:   PRODUCE DISCOVERY
                                )    2:   DISMISS INDICTMENT BECAUSE
16                              )         MISINSTRUCTION OF THE GRAND
                                )         JURY;
17                              )    3:   FOR FURTHER MOTIONS.
                                )
18 TO: KAREN P. HEWITT, UNITED STATES ATTORNEY, and JEFFREY MOORE,
       ASSISTANT UNITED STATES ATTORNEY
19
       PLEASE TAKE NOTICE that Defendant, Octavio Moreno Reyna, by and
20
   through his Counsel, David J. Zugman, files these initial motions to be
21
   heard before the Honorable Roger T. Benitez on June 30, 2008, at 2:00
22
   p.m..
23
       These motions are based upon the facts and law pertaining to this
24
   case.  Mr. Reyna's motions are to
25
       1)   Produce Discovery;
26
       2)   Dismiss the Indictment Because of Misinstruction of the Grand
27
            Jury and the Improper Dismissal of 2 Grand Jurors;
28
                                                              08CR1636-BEN

1      3)    File Further Motions.

2      This motion is based upon the information received from the
3  Government thus far.

4                                               Respectfully Submitted,

Date: June 16, 2008                          S/David J. Zugman
                                                David J. Zugman
                                                Attorney for Mr. Reyna

PROOF OF SERVICE

I, the undersigned, declare that:

1. I am over eighteen (18) years of age; am a resident of the County of San Diego, State of California; and my business address is 964 Fifth Avenue, Suite 300, San Diego, California, 92101-5008.

2. I am effecting service of NOTICE OF AND DEFENDANT'S MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

   Jeffrey Moore, Assistant U.S. Attorney
   Office of the U.S. Attorney
   880 Front Street
   San Diego, CA 92101

3. I hereby certify that I have mailed the foregoing, by United States Postal Service to the following non-EFC participants in this case:

   1. N/A

to the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 16, 2008.

S/David Zugman
DAVID J. ZUGMAN

DAVID J. ZUGMAN
California State Bar Number 190818
964 Fifth Avenue, Suite 300
San Diego, California  92101
Telephone: (619) 699-5931
Facsimile: (619) 699-5932
dzugman@burchamzugman.com

Attorney for Octavio Moreno Reyna

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE ROGER T. BENITEZ)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR1636-BEN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES |
| OCTAVIO MORENO REYNA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

Octavio Moreno Reyna is charged with the importation of heroin into the United States with a quantity allegation which invokes a 5 year minimum mandatory sentence under 21 U.S.C. §§ 841(b)(1)(B), 960(b)(2)(H).  Mr. Reyna has had some initial conversations with the government about resolving the case, but those talks have not yet led to an agreement.  Mr. Reyna is hopeful that this case will be resolved short of trial and these motions are filed with the expectation that the parties will be seeking a continuance of the initial motion hearing so that negotiations can continue.

**II.**

**STATEMENT OF FACTS**

Mr. Reyna was arrested at the Calexico Port of Entry on May 7, 2008, during a "block blitz" operation. A block blitz is a random stopping of a group of individuals in a section of the port entry and searching all of them. During the investigation of Mr. Reyna, the Customs Agents noticed that Mr. Reyna's shoes seemed heavier than they should be. Subsequent investigation led the Agents to allege that Mr. Reyna's shoes contained heroin (approximately .58 kilograms.)

Mr. Reyna was arrested and interrogated about the heroin. Mr. Reyna was cooperative post-arrest and gave a detailed statement.

**III.**

**MOTIONS**

**A.    The Government Should Produce Discovery.**

Mr. Reyna requested Rule 16 discovery by phone and letter on May 23, 2008. 68 pages of discovery and a DVD of Mr. Reyna's statement were produced.

Pursuant to Fed. R. Crim. P. 12(d)(2), 16(a), and 26.2, Brady v. Maryland, 373 U.S. 83 (1963), and all other applicable rules and statutes, the government should produce discovery.

Mr. Reyna asserts his right to evidence regarding:

(1) The Defendant's Statements Under Fed. R. Crim. P. 16(a)(1)(A), all written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial, and any written summaries of the

1 defendant's oral statements contained in the handwritten notes of the
2 government agent; any response to any <u>Miranda</u> warnings which may have
3 been given to the defendant (<u>See</u> <u>United States v. McElroy</u>, 697 F.2d 459
4 (2d Cir. 1982)); and any other statements by the defendant that are
5 discoverable under Fed. R. Crim. P. 16(a)(1)(A);

6     (2) <u>Arrest Reports, Notes and Dispatch Tapes</u>.  Mr. Reyna also
7 specifically requests that all arrest reports, notes, and dispatch or any
8 other tapes that relate to the circumstances surrounding his arrest or
9 any questioning, be turned over.  This request includes, but is not
10 limited to, any rough notes, records, reports, transcripts or other
11 documents in which statements of Mr. Reyna or any other discoverable
12 material is contained.  This is all discoverable under Fed. R. Crim. P.
13 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). <u>See also</u> <u>Loux v.</u>
14 <u>United States</u>, 389 F.2d 911 (9th Cir. 1968); <u>United States v. Johnson</u>,
15 525 F.2d 999 (2d Cir. 1975); <u>United States v. Lewis</u>, 511 F.2d 798 (D.C.
16 Cir. 1975);

17     Arrest reports, investigator's notes, memos from arresting officers,
18 dispatch tapes, sworn statements, and prosecution reports pertaining to
19 Mr. Reyna are available under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed.
20 R. Crim. P. 26.2 and 12(i). **Preservation of rough notes is specifically**
21 **requested, whether or not the government deems them discoverable at this**
22 **time**;

23     (3) <u>Reports of Scientific Tests or Examinations</u> Pursuant to Fed. R.
24 Crim. P. 16(D), Mr. Reyna requests the reports of all tests and
25 examinations conducted upon the evidence in this case, including but not
26 limited to any fingerprint analysis that is within the possession,
27 custody, or control of the government, the existence of which is known,
28

1 or by the exercise of due diligence may become known, to the attorney for
2 the government, and which are material to the preparation of the defense
3 or which are intended for use by the government as evidence in chief at
4 the trial;

5     (4) <u>Brady Material</u>  Mr. Reyna requests all documents, statements,
6 agents' reports, and tangible or other evidence favorable to Mr. Reyna on
7 the issue of guilt and/or which affects the credibility of the
8 government's case.  Impeachment as well as exculpatory evidence falls
9 within <u>Brady</u>'s definition of evidence favorable to the accused. <u>United
10 States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S.
11 97 (1976);

12     (5) <u>Evidence Seized</u>  Evidence seized as a result of any search,
13 either warrantless or with a warrant, is discoverable under Fed. R.
14 Crim. P. 16(a)(1)(C), and is hereby requested;

15     (6) <u>Request for Preservation of Evidence</u>  Mr. Reyna specifically
16 requests that any and all videotapes of the Port of Entry at or near the
17 time of the arrest, dispatch tapes, recordings of interrogations, or any
18 other physical evidence that may be destroyed, lost, or otherwise put
19 out of the possession, custody, or care of the government and which
20 relate to the arrest or the events leading to the arrest in this case be
21 preserved.  This request includes, but is not limited to, any samples
22 used to run any scientific tests and any evidence seized from any third
23 party;

24     (7) <u>Tangible Objects</u>  Mr. Reyna requests, under Fed. R. Crim. P.
25 16(a)(2)(C), the opportunity to inspect and copy as well as test, if
26 necessary, all other documents and tangible objects, including any
27 alleged contraband, photographs, books, papers, documents, photographs,

28

buildings, automobiles, or places, or copies, depictions, or portions thereof which are material to the defense or intended for use in the government's case-in-chief, or were obtained from or belong to Mr. Reyna;

(8) <u>Evidence of Bias or Motive to Lie</u> Mr. Reyna requests any evidence that any prospective government witness is biased or prejudiced against Mr. Reyna, or has a motive to falsify or distort his or her testimony. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988);

(9) <u>Impeachment Evidence</u> Mr. Reyna requests any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, and whether any witness has made a statement favorable to Mr. Reyna. See Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under <u>Brady v. Maryland</u>, supra. See <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility);

(10) <u>Evidence of Criminal Investigation of Any Government Witness</u> Mr. Reyna requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985);

(11) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>  The defense requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has

1  ever been an alcoholic. <u>United States v. Strifler</u>, 851 F.2d 1197 (9th
2  Cir. 1988); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th Cir. 1980);
3      (12)  <u>Name of Witnesses Favorable to Mr. Reyna</u> Mr. Reyna requests
4  the name of any witness who made an arguably favorable statement
5  concerning Mr. Reyna. <u>Jackson v. Wainwright</u>, 390 F.2d 288 (5th Cir.
6  1968); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 223 (4th Cir. 1980);
7  <u>Jones v. Jago</u>, 575 F.2d 1164, 1168 (6th Cir.), <u>cert. denied</u>, 439 U.S.
8  883 (1978); <u>Hudson v. Blackburn</u>, 601 F.2d 785 (5th Cir. 1979), <u>cert.
9  denied</u>, 444 U.S. 1086 (1980); Mr. Reyna would remind the government
10 that it has a duty to seek out exculpatory information that is the hands
11 of the police. <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995).

12     (13)  <u>Statements Relevant to the Defense</u> Mr. Reyna requests
13 disclosure of any statement that may be "relevant to any possible defense
14 or contention" that he might assert. <u>United States v. Bailleaux</u>, 685
15 F.2d 1105 (9th Cir. 1982). This includes in particular any statements by
16 any percipient witnesses.

17     (14)  <u>Jencks Act Material</u> The defense requests all material to which
18 defendant is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, and
19 Fed. R. Crim. P. 26.2. Mr. Reyna specifically requests pretrial
20 production of these statements so that the court may avoid unnecessary
21 recesses and delays for defense counsel to properly use any Jencks
22 statements and prepare for cross-examination;

23     (15)  <u>Giglio Information</u> Pursuant to <u>Giglio v. United States</u>, 405
24 U.S. 150 (1972), Mr. Reyna requests all statements and/or promises,
25 express or implied, made to any government witnesses, in exchange for
26 their testimony in this case, and all other information which could
27 arguably be used for the impeachment of any government witnesses;
28

(16) <u>Government Examination of Law Enforcement Personnel Files</u>  Mr. Reyna requests that the government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses.  Mr. Reyna requests that these files be reviewed by the government attorney for evidence of perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).  <u>See</u> <u>United States v. Jennings</u>, 960 F.2d 1488, 1492 (9th Cir. 1992).

Mr. Reyna specifically requests that any and all impeachment information with respect to the arresting officers be either turned over to Mr. Reyna or submitted to the Court for <u>in camera</u> review.

(17)  Pursuant to Fed. R. Crim. P. 16(a)(1)(E), Mr. Reyna requests disclosure of the identities, qualifications, and testimony of any expert witnesses the government intends to call at trial.

(18)  Pursuant to Fed. R. Crim. P. 16(a)(1)(E), Mr. Reyna requests summaries of any expert witness the government intends to call, along with the identities of those witnesses.

Through this motion, Mr. Reyna wishes to exercise his rights under Rule 16.  As soon as the government tells Mr. Reyna that discovery is completed, then Mr. Reyna will comply with his reciprocal obligations under Federal Rule of Criminal Procedure 16(b)(1).

**B.   Misinstruction of the Grand Jury.**

This Court is familiar with this motion as it has no doubt heard the grand jury misinstruction claim before.  Consequently, Mr. Reyna will sketch the argument (though if the Court desires the full argument

1  to aid decision, then Mr. Reyna happily would provide the unabridged
2  version.)  Mr. Reyna assumes that the government does not dispute the
3  basis for the argument, that is that the 2007 grand jury was instructed
4  described below.  To the extent the government disputes Mr. Reyna's
5  characterization, Mr. Reyna would ask for production of the charge to
6  the grand jury and the voir dire of the grand jury pursuant to Federal
7  Rule of Criminal Procedure 6(d)(3)(E)(ii).[1]

8      United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en
9  banc) is the chief authority upon which Mr. Reyna relies in arguing that
10 the grand jury was misinstructed.  In Navarro-Vargas, the Ninth Circuit
11 narrowly upheld the unmodified model grand jury instructions given to
12 the grand jury in that case, but not without "conced[ing] that there may
13 be more done to further increase the shielding power of the modern
14 federal grand jury," and explicitly "not [ ] hold[ing] that the current
15 instructions could not or should not be improved." See Navarro-Vargas,
16 408 F.3d at 1208.   The Navarro-Vargas majority, however, did not
17 consider the proposition that grand jury has the power to charge either
18 the  lesser  or  the  greater  offense  as  part  of  its  constitutional
19 discretion. Navarro-Vargas acknowledged the significant discretion that
20 the grand jury possesses to "refuse to return an indictment even 'where
21 a conviction can be obtained.'" 408 F.3d at 1200 (citing *Vasquez*, 474
22 U.S. at 263).  However, Navarro-Vargas did not undertake to decide
23 whether it was error for a district court to instruct a grand jury that

---

[1]    "(E) The court may authorize disclosure—at a time, in a
manner, and subject to any other conditions that it directs—of a
grand-jury matter:
       [ . . .]
       (ii) at the request of a defendant who shows that a
       ground may exist to dismiss the indictment because
       of a matter that occurred before the grand jury."

it may not consider the issue of punishment as it is clear under our system that a grand jury does indeed consider the issue of punishment. It follows that Mr. Reyna's grand jury was misinstructed because it was not told of its ability to consider punishment in deciding whether to charge a particular offense.

To the extent Navarro-Vargas upholds the grand jury instructions which tell the grand jury that it 'should' consider whether probable cause exists to charge the offense, it does not control the outcome in Mr. Reyna's case. Indeed, the understanding of the grand jury's power advocated by Mr. Reyna is the only way to vest the grand jury with its historical power. The legitimacy of the discretion vested in grand jurors is made clear in Vasquez. That case ultimately held that racial discrimination in grand jury selection is, in effect, a structural error. One of the reasons why racial discrimination in grand jury selection is so prejudicial – even after a petit jury conviction – is that the grand jury enjoys broad discretion in choosing what to charge and whether to charge at all, even in a case where there is not only probable cause, but proof beyond a reasonable doubt. See Vasquez, 474 U.S. at 263. If a grand jury's discretion not to charge an offense, or to charge a lesser offense, was not a *legitimate* grand jury function, then Vasquez could not have relied upon that attribute in determining whether the error in that case merited reversal.

In fact, Vasquez reasoned that the grand jury's powers are much more expansive: it need not indict at all, even where a conviction can be had, and it may choose to charge lesser or fewer offenses. 474 U.S. at 263. This lays bare why harmless error review is impossible for grand jury misinstruction claims: "even if a grand jury's determination

of probable cause is confirmed by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly infect the framing of the indictment and, consequently, the nature or very existence of the proceedings to come." Id. Vasquez thus found that the error was structural because racial discrimination was pernicious *and* because the grand jury's broad discretion prevents a reviewing court from ever knowing whether an unbiased and properly constituted grand jury would have exercised its discretion differently: "we simply cannot know that *the need to indict* would have been assessed in the same way by a grand jury properly constituted." Id. at 264 (emphasis added). Vasquez's grand jury analysis is binding because it is necessary to the decision *and* part of an "explication[] of the governing rules of law." See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67 (1996) (citations omitted).

Mr. Reyna is entitled to the "traditional functioning of the institution that the Fifth Amendment demands," see United States v. Williams, 504 U.S. 36, 51 (1992), and by charging the grand jury that was not allowed to consider question of punishment, Mr. Reyna was denied the traditional functioning of the grand jury. That error is structural. See Navarro-Vargas, 408 F.3d at 1214, 1216-17 (Hawkins, J., dissenting); accord Navarro-Vargas, 367 F.3d at 903 (Kozinski, J., dissenting).[2]

Mr. Reyna also objects to the dismissal of 2 grand jurors from the panel. Mr. Reyna believes that these otherwise qualified jurors were

---

[2] Because the Navarro-Vargas majority found no error in the form instruction given, and not modified, in that case, the majority had no occasion to address the structural error analyses in Judge Hawkins' and Judge Kozinski's dissents. This Court may therefore rely upon them as the persuasive authority of six Ninth Circuit judges.

improperly dismissed because of the erroneous view of the grand jury's role held by the presiding judge. Not only was the dismissal of these 2 grand jurors improper, it had a pedagogical effect on the rest of the grand jury which cemented the view that the grand jury was disallowed from considering anything other than whether probable cause existed.

This is only a brief outline of Mr. Reyna argument on the grand jury, he requests an opportunity to supplement this pleading once the grand jury voir dire and charge has been disclosed. Because the argument is made so frequently, Mr. Reyna must briefly comment on the government's inevitable argument that Mr. Reyna is advocating grand jury nullification. One thing should be clear: even if we are to call a grand jury's refusal to indict "jury nullification," Navarro-Vargas does not "forbid" such action; "there is nothing to prevent a grand jury from engaging in nullification . . . ." 408 F.3d at 1204. Indeed, Navarro-Vargas has acknowledged that this exact sort of discretion is a *significant* power of the grand jury. Id. at 1200 (citations omitted). This is not nullification and the classic sense of the word. When a prosecutor chooses not to prosecute a case, that is not nullification; it is an exercise of prosecutorial discretion. Because the grand jury's "function . . . is most accurately described as prosecutorial," see Navarro-Vargas, 367 F.3d at 900 (Kozinski, J., dissenting), its decision not to approve a prosecution for which probable cause exists is no more nullification than a similar decision made by a prosecutor.

Finally, the instructions given to a grand jury are not covered by the grand jury secrecy rule: "[t]he proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not." See United States v. Alter, 482 F.2d 1016, 1029

n.21 (9th Cir. 1973). The voir dire of the prospective grand jurors is not secret because it is not "a matter occurring before the grand jury." See Fed. R. Crim. P. 6(e)(2)(B). Because it is not such a matter, a court reporter may not be required to keep it secret. See id., Rule 6(e)(2)(A), (B)(iii). While the Ninth Circuit has suggested that Rule 6 does not completely describe the scope of grand jury secrecy, see In re Special Grand Jury (For Anchorage, Alaska), 674 F.2d 778, 781 (9th Cir. 1982), any extension of the rule cannot contradict Rule 6, and that Rule forbids the imposition of any secrecy requirement on a court reporter other than one applicable to "a matter occurring before the grand jury." See Fed. R. Crim. P. 6(e)(2)(A), (B)(iii).[3] Because there is no grand jury until one is sworn, the voir dire of a venire of prospective grand jurors cannot possibly be covered.

But even if Special Grand Jury controls, the standard in that case still requires disclosure. It holds that

> members of the public have a right, ..., subject to the rule of grand jury secrecy, of access to the ministerial records in the files of the district court having jurisdiction of the grand jury. Absent specific and substantial reasons for a refusal, such access should not be denied.

Id., 674 F.2d at 781. "Ministerial" records "generally relate to the procedural aspects of the empanelling and operation of the Special Grand Jury, as opposed to records which relate to the substance of the Special Grand Jury's investigation." See id. at 779 n.1. See also In re Grand Jury Proceedings, Special Grand Jury 89-2 (Rocky Flats Grand Jury), 813 F. Supp. 1451, 1469 (D. Colo. 1993) ("An instructive standard [in

---

[3] The Rules permit a party to "challenge the grand jury on the ground that it was not lawfully ... selected...." Fed. R. Crim. P. 6(b)(1). Such a challenge presupposes knowledge of the selection process, including voir dire.

determining whether to reveal grand jury records], is whether the disclosed information would reveal the substance or essence of the grand jury's investigation or deliberations."). The records requested here relate only to the selection process, not "to the substance of the ... Grand Jury's investigation." See id. at 779 n.1. They are not secret.[4]

In short, because the voir dire is inextricably linked with the instructions to which Mr. Reyna is entitled as a matter of right, the transcript must be made available. See Alter, 482 F.2d at 1029 n.21. In addition, the voir dire is neither secret under Rule 6 nor can it be withheld under Special Grand Jury, which permits disclosure of information that does not "relate to the substance of the ... Grand Jury's investigation." See 674 F.2d at 779 n.1.

The Court may order disclosure of grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). The Ninth Circuit requires a "particularized need" to justify disclosure, see United States v. Walczak, 785 F.2d 852, 857 (9th Cir. 1986), but that need cannot be any different than the standard set forth in Rule 6(e)(3)(E)(ii): Mr. Reyna need only show that "a ground *may* exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii) (emphasis added). That is why the Rule's "general

---

[4] Special Grand Jury suggested, but did not hold, that the names of the grand jurors may be secret. *See* 674 F.2d at 782 & n.4. Mr. Reyna disagrees; petit jurors are named publicly, and they perform their duties nonetheless. Nothing in Rule 6 supports a non-disclosure rule. Moreover, redacting the names would potentially make the transcript unintelligible. If the Court disagrees, however, it could order the court reporter to produce the transcript and substitute numbers or letters for the prospective grand jurors' names.

1  suggestion [is] in favor of disclosure." See Walczak, 785 F.2d at 857.
2      Mr. Reyna's motion to dismiss the indictment explains why "a ground
3  may exist to dismiss the indictment because of a matter that occurred
4  before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii) (emphasis
5  added).  Disclosure is therefore required.
6  **C.   File Further Motions**
7      These motions are based on the information received thus far from
8  the government. Should the government disclose additional evidence, Mr.
9  Reyna may need to file additional motions and he requests the ability to
10 do the same.

**IV.**

**CONCLUSION**

13     Mr. Reyna respectfully requests that this Court grant his motion to
14 produce discovery, dismiss the indictment, and to allow further motions.

                                    Respectfully submitted,

Dated: June 16, 2008              /S David J. Zugman
                                  **DAVID J. ZUGMAN**
                                  Attorney for Mr. Reyna